UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. 4:20-CR-382-SDJ |
| | § | |
| AVAZ KARIMOV (87) | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Avaz Karimov's Appeal of Detention Order and Request for Hearing, (Dkt. #1452), in which Karimov seeks revocation of the magistrate judge's pretrial detention order and a hearing on the motion.[1] The Government filed a response. (Dkt. #1506). The Court, having considered the motion, the Government's response, the transcript of the detention hearing before the magistrate judge, the record, and the applicable law, **DENIES** the motion and the relief requested.

### I. BACKGROUND

Karimov is part of a large criminal case, involving over 100 defendants, that began with an FBI investigation into a series of armed robberies of cell phone stores in the Dallas area. The investigation revealed a much larger conspiracy: "a gray market in which wholesalers obtained high-end cell phones from device traffickers and then exported and sold the cell phones abroad." *United States v. Aziz*, 2022 WL 1056102 (5th Cir. 2022). At the top of the conspiracy was wholesaler RJ Telecom. RJ

---

[1] Though Karimov styles this as an "appeal" of a detention order, the Court concludes that it is appropriately construed as a motion for revocation of a detention order pursuant to 18 U.S.C. § 3145(b), which Karimov cites in his motion.

Telecom and its related entities have exported more than $100 million worth of products to foreign countries. Karimov operated two businesses that were suppliers to RJ Telecom, UZ Global Inc. and Pyramid Moving, Inc. These entities allegedly bought illicitly obtained electronic devices and other consumer goods and sold them to RJ Telecom, which in turn shipped the devices abroad to importers in, among other locations, Hong Kong and the United Arab Emirates. Karimov is charged with the following crimes: conspiracy to transport stolen property in interstate and foreign commerce and aiding and abetting, in violation of 18 U.S.C. §§ 371, 2314, and 2; conspiracy to commit mail fraud, in violation of 18 U.S.C. § 1341; conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1343; and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). (Dkt. #1047).

Following his arrest, Karimov appeared before a magistrate judge for a pretrial detention hearing. (Dkt. #921). During the hearing, the Government presented the testimony of FBI Special Agent Chris Doering, who testified to Karimov's role in the conspiracy and evidence collected prior to the hearing. *See* (Dkt. # 1329). The magistrate judge concluded the hearing by taking the matter of pretrial detention under advisement, pending Pretrial Services' verification of certain matters. (Dkt. #921); (Dkt. #1329 at 81–82). After Pretrial Services filed an Addendum to its initial report on Karimov that included details not addressed at the detention hearing, (Dkt. #956), the magistrate judge ordered additional briefing, (Dkt. #1028). Both Karimov and the Government filed additional briefs. (Dkt. #1234, #1243). Ultimately, the magistrate judge entered an order detaining Karimov pending trial,

having concluded there is clear and convincing evidence that no condition or combination of conditions of release imposed on Karimov will reasonably assure the safety of any other person and the community and that there is a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure Karimov's appearance as required. (Dkt. #1363). Karimov has moved for revocation of the detention order. (Dkt. #1452).

## II. LEGAL STANDARD

Under 18 U.S.C. § 3145(b), a person ordered detained by a magistrate judge may seek review of the detention order in district court. The district court reviews a motion to revoke a detention order de novo and "must make an independent determination of the proper pretrial detention or conditions for release." *United States v. Rueben*, 974 F.2d 580, 585 (5th Cir. 1992) (citation omitted). Accordingly, the Court has discretion to "support what the magistrate has actually ordered with additional findings based on its independent consideration of the record before the magistrate and the additional evidence adduced before it." *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985).

The Bail Reform Act, 18 U.S.C. § 3142, governs the release and detention of defendants awaiting trial. A judicial officer may order a defendant detained pending trial upon a finding that the Government has shown by a preponderance of the evidence that "no condition or combination of conditions will reasonably assure the appearance of the person," or by clear and convincing evidence that "no condition or combination of conditions will reasonably assure . . . the safety of any other person

3

and the community." 18 U.S.C. § 3142(e)(1); *see also Rueben*, 974 F.2d at 586 ("For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance, or the safety of others or the community, is sufficient; both are not required.").

Section 3142(g) provides that a court shall consider the following factors in determining whether there are conditions of release that will reasonably assure the defendant's appearance and the safety of the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *see also United States v. Acosta-Leyva*, 751 F.App'x 594, 595 (5th Cir. 2019) (per curiam).

### III. DISCUSSION

The Court, having reviewed the transcript of the detention hearing held before the magistrate judge, Pretrial Services' Report and Addendum, the briefing submitted after the hearing, the magistrate judge's order, Karimov's motion, and the Government's response, concludes that there is no need for a hearing on the motion. The parties' arguments have been clearly articulated in the briefing. The Court therefore has discretion to "support what the magistrate has actually ordered with additional findings based on its independent consideration of the record before the

magistrate and the additional evidence adduced before it." *Fortna*, 769 F.2d at 250. Karimov's request for a hearing on the motion is therefore denied. *See United States v. Hensler*, 18 F.3d 936, 1994 WL 83436, at *2 (5th Cir. 1994) (per curiam) ("The district court has discretion in determining whether to conduct a supplementary evidentiary hearing as part of its de novo review [of a magistrate judge's detention order]." (citation omitted)).

Having independently considered the record and the Section 3142(g) factors, as detailed below, the Court concludes that Karimov presents a flight risk and a danger to the community and that there are no conditions of release that would adequately address these risks. Therefore, Karimov's motion for revocation of the magistrate judge's detention order must be denied, and he must be detained pending trial.

**A. The Section 3142(g) factors weigh in favor of detention.**

### i. Nature and circumstances of the charged offense

Karimov is charged with multiple serious offenses—conspiracy to transport stolen property in interstate and foreign commerce and aiding and abetting, conspiracy to commit mail fraud, conspiracy to commit wire fraud, and conspiracy to commit money laundering. Multiple of these counts carry a sentence of up to twenty years in prison. The severity of the potential sentence weighs in favor of detention. *See United States v. Zhang Xiao Dong*, No. 3:17-CR-546-L, 2017 WL 5629513, at *3 (N.D. Tex. Nov. 22, 2017) (concluding that possible prison sentence of forty-six to fifty-seven months presented motive to flee).

5

The circumstances of the offenses charged also weigh in favor of detention. Special Agent Doering testified to the scope of the broader conspiracy within which Karimov allegedly operated. Karimov's business was extensive. Special Agent Doering testified that federal law enforcement authorities have developed evidence that Karimov bought and sold large quantities of stolen or otherwise fraudulently obtained consumer goods. According to Special Agent Doering, Karimov played an intermediary role in the complex scheme by purchasing devices from device traffickers and selling them in turn to RJ Telecom. Special Agent Doering further testified that entities under Karimov's control received more than $200,000 from co-conspirators, not accounting for potential cash transactions. As described in the Fourth Superseding Indictment, (Dkt. #1047), RJ Telecom and its related entities exported over $100 million of Apple and Samsung products to foreign countries.

Additionally, three witnesses have confirmed that, on multiple occasions, Karimov conducted his role in the conspiracy accompanied by an armed partner, his nephew and co-defendant Muhammad Karimov.

In sum, the nature and circumstances of Karimov's charged offenses significantly decrease the likelihood that he will appear at trial and significantly increase the likelihood that he is a danger to the community, and therefore weigh in favor of detention.

### ii. Weight of the evidence

The Court must also consider the weight of the evidence against Karimov, although this factor is considered "to be of least importance in the detention

determination." *United States v. Stanford*, 630 F.Supp.2d 751, 755 (S.D. Tex. 2009) (citing *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986); *United States v. Barnett*, 986 F.Supp. 385, 393 (W.D. La. 1997)).

The Government produced significant evidence against Karimov. Bank records show payments from RJ Telecom and other related entities to entities under Karimov's control. Multiple cooperating defendants have identified Karimov as being involved in the scheme and described the way in which Karimov conducted his transactions. And a search warrant executed at Karimov's residence revealed a large quantity of cell phones and shipping labels.

The weight of evidence against Karimov weighs in favor of detention.

### iii. History and characteristics of the defendant

Karimov's history and characteristics considered in totality also weigh in favor of detention. Relevant history and characteristics include "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A).

Karimov has family connections, including his wife, children, mother, and siblings, in the Dallas-Fort Worth area. Karimov has lived in the DFW area for approximately four years, does not have any history related to drug or alcohol abuse, and has no prior criminal history. However, these positive characteristics are

7

substantially outweighed by a number of characteristics indicating that no conditions could reasonably assure Karimov's appearance as required.

The Government presented information showing that Karimov has extensive family ties overseas and has traveled overseas regularly, including an eighteen-day stay in Turkey with his wife's family less than one month prior to his arrest and a March 2021 trip to Turkey during which he opened a bank account. Additionally, though Karimov is a naturalized U.S. citizen, he spent his early life in Uzbekistan, where he has extended family on his mother's side and his wife's side. Thus, Karimov has strong family ties both in this district and overseas—and his ties overseas could aid him in fleeing prosecution.

The Court is particularly concerned by certain behavior Karimov has exhibited since being indicted—including apparent misrepresentations to Pretrial Services—which cast doubt on his character and suggest that he is likely to attempt to obstruct justice. *See United States v. Djoko*, No. CR19-0146-JCC, 2019 WL 4849537, at *4 (W.D. Wash. Oct. 1, 2019) (explaining that evidence of the defendant's "willingness to destroy evidence and lie to authorities creates a serious risk that he may attempt to obstruct justice in some other way"); *United States v. Fattah*, 351 F.Supp.3d 1133, 1138 (N.D. Ill. 2019) (noting that "prior lies and deceptions to authorities are factors that can be considered on the question of bond" and that "[p]ast behavior is often prologue and is a proper predictive criterion to be employed in determining whether a person will abide by his or her present promises"). Karimov failed to disclose his recent travels to Turkey and the existence of his Turkish bank account during his

8

pretrial interview. Pretrial Services learned of these facts through an interview with Karimov's wife and presented these facts to the magistrate judge shortly following Karimov's detention hearing. (Dkt. #956). The Government reports that Karimov himself stated that his last overseas travel was a July 2020 trip to Turkey, where he was denied entry due to the COVID-19 pandemic, but that Karimov failed to disclose his trips to Turkey in March and July of 2021. Karimov argues that the July 2020 trip he disclosed and the July 2021 trip his wife disclosed are one and the same— there was merely a mix-up as to the year in which the trip took place. Karimov further argues that there were many interviews that took place at the same time as his Pretrial Services interview and that he has a thick accent and wore a mask during his interview, all of which contributed to the "reasonable explanation that this was a mistake or misunderstanding rather than Mr. Karimov being untruthful." (Dkt. #1452 at 5–6). But as the Government points out, this explanation is implausible. Karimov was denied entry to Turkey in July 2020. But in July 2021, Karimov, his wife, and one of their children spent eighteen days in Turkey visiting his wife's family. It is difficult to conceive of how these trips could be confused. It is also difficult to conceive of why Karimov omitted mention of his March 2021 trip to Turkey.

The evidence of Karimov's recent and lengthy foreign travel, along with his lack of candor regarding the travel, suggests a significant flight risk and weighs in favor of detention.

During Karimov's March 2021 trip to Turkey—which notably occurred after he called police regarding a February 2021 transaction-turned-robbery and

subsequently told police he had been purchasing cell phones for several months—Karimov opened a bank account to which only he has access. Pretrial Services again learned of this fact belatedly from Karimov's wife, rather than from Karimov himself. Karimov has asserted that he opened the account for his mother in anticipation of her traveling to Turkey to visit family—a trip that never occurred. He has also asserted that he is willing to have the U.S. Government place a hold on the bank account and has provided the account information to his counsel. The facts that Karimov opened the account, that his mother never made the trip for which the account was allegedly opened, that Karimov himself is the only person named on the account or with access to the account, that he failed to disclose the account, and that he has family ties overseas, all significantly outweigh Karimov's offer to allow the Government to freeze the account.

As to employment, Karimov has represented that he will seek employment if he is released. However, aside from purported day-trading, he is currently unemployed, as his prior employment was part and parcel of the conspiracy for which he has been indicted.

Finally, Karimov's financial resources indicate that no combination of conditions would reasonably assure his appearance for further proceedings. As discussed above, Karimov's business as part of the alleged conspiracy was relatively lucrative, and the Government cannot account for all of Karimov's financial assets. And in his motion, Karimov states that he has "close family support if needed for

financial matters." (Dkt. #1452 at 11). These circumstances suggest that Karimov has the means—and as established above, the connections—to flee the United States.

In sum, Karimov's history and circumstances, considered in totality, weigh in favor of detention.

### iv. Nature and seriousness of the danger to others or the community

Lastly, the Court must consider the nature and seriousness of the danger to any person or the community that would be posed by Karimov's release. As established above, the Government has provided information showing that Karimov conducted transactions accompanied by his codefendant-nephew and that the two carried a firearm in their vehicle during their transactions. Three individuals have described the vehicle Karimov and his nephew used for their transactions and stated that they observed a firearm in the vehicle on multiple occasions. One individual stated that he saw a firearm in Karimov's waistband during multiple exchanges. Information adduced at the detention hearing also shows that at least some of the transactions took place in public parking lots.

Karimov's apparent willingness to conduct criminal transactions with the aid of a firearm and in public spaces suggests that he presents a danger to others as well as the community.

## B. Karimov is a flight risk and a danger to the community.

All four Section 3142(g) factors weigh in favor of detention. The Court concludes that the Government has demonstrated by a preponderance of the evidence that there is no combination of release conditions that would reasonably assure

Karimov's appearance for further proceedings given: his frequency of international travel; his foreign bank account; his lack of candor regarding both of those facts; his extensive overseas family ties; and his financial situation. The Court also concludes that there is clear and convincing evidence that no condition or combination of conditions of release imposed on Karimov will reasonably assure the safety of any other person and the community given the evidence that Karimov, if released, may continue to engage in transactions in public areas while he has access to a firearm.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED** that Karimov's Appeal of Detention Order and Request for Hearing, (Dkt. #1452), is **DENIED**. Karimov shall remain in custody pending trial.

**So ORDERED and SIGNED this 24th day of May, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE